**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**LARRY RASHONE PRUNTY,**

      **Petitioner,**

**v.**                        **Case No.  1:17cv117-MW/CAS**

**JULIE L. JONES,**

      **Respondent.**

_____/

## <u>REPORT AND RECOMMENDATION TO DENY § 2254 PETITION</u>

On May 2, 2017, Petitioner, Larry Rashone Prunty, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se under the mailbox rule, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with supporting memorandum.  ECF No. 1.  Respondent filed an answer on April 30, 2018.  ECF No. 24.  On June 28, 2018, Petitioner filed a reply with exhibits.  ECF Nos. 28, 29.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the
pleadings and attachments before the Court show that Petitioner is not
entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Information filed in Alachua County,
Florida, on December 1, 2011, with home invasion robbery in violation of
section 812.135, Florida Statutes.  Ex. A at 8-9.[1]  An Amended Information
was filed on May 30, 2012, charging armed home invasion robbery and
concealment of part of the face in violation of section 812.135(2), Florida
Statutes.  Ex. A at 59.  A Second Amended Information was filed on June
13, 2012, charging home invasion robbery with a firearm and concealment
of the face or parts thereof with a mask or clothing in violation of sections
812.135(2)(a) and 775.0845, Florida Statutes.  Ex. A at 61.

Jury trial was held on June 18-20, 2012, Ex. B, and the jury found
Petitioner guilty as charged of home invasion robbery with special findings
that Petitioner as principal or co-defendant was armed with a deadly
weapon/firearm and that he concealed his face with a mask.  Ex. A at 67-

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A
through II submitted in conjunction with Respondent's answer.  *See* ECF No. 24.

69; Ex. B at 390-91.  Petitioner was sentenced as a Prison Releasee Reoffender to life in prison.  Ex. A at 85-97; 271-283.

Petitioner appealed to the First District Court of Appeal, raising one claim that the trial court fundamentally erred in instructing the jury on the law of principals.  Ex. D.  The district court affirmed per curiam without discussion on March 5, 2013.  Ex. F.  The mandate was issued on May 13, 2013.  Ex. I.  *See* Prunty v. State, 110 So. 3d 904 (Fla. 1st DCA 2013) (table).

On August 29, Petitioner filed a petition alleging ineffective assistance of appellate counsel in the First District Court of Appeal.  Ex. K.  He alleged that appellate counsel rendered ineffective assistance by failing to appeal the failure of the trial court to hold a Richardson[2] hearing and by charging the continuance to the defense rather than the State.  The district court of appeal denied the petition "on the merits" on September 19, 2013.  Ex. L. Prunty v. State, 121 So. 3d 1161 (Fla. 1st DCA 2013).  On September 24, 2013, Petitioner filed a motion for voluntary dismissal, seeking to dismiss the petition without prejudice, Ex. M, which the court denied on October 2,

---

[2] Richardson v. State, 246 So. 2d 771 (Fla. 1971) (providing that the trial court's inquiry into discovery violations includes whether the State's conduct was inadvertent or willful, whether it was trivial or substantial, and whether it prejudiced the defendant's ability to prepare for trial).

2013.  Ex. N.  The Florida Supreme Court denied review.  Ex. P.  Prunty v.
State, 130 So. 3d 693 (Fla. 2013) (table).

On March 2, 2014, Petitioner filed his first motion for post-conviction
relief under Florida Rule of Criminal Procedure 3.850.  Ex. Q.  The motion
was voluntarily dismissed before a ruling, Ex. R, and Petitioner filed an
amended motion.  Ex. S.  Petitioner moved to strike or amend his motion,
Ex. T, and on November 19, 2014, the post-conviction court dismissed both
the March 2014 motion and the October 2014 motion without prejudice.
Ex. U.

On February 12, 2015, Petitioner filed a Rule 3.850 motion, Ex. V at
1-72, but on December 10, 2015, Petitioner moved to voluntarily dismiss
the February 2015 motion.[3]  Ex. V.  Petitioner immediately filed an
amended motion raising twenty-one claims for relief.[4]  Ex. V at 75-153.

---

[3] The February 2015 motion was subsequently dismissed on September 6, 2016,
after the court ruled on Petitioner's final Rule 3.850 motion.  Ex. V at 509-10.

[4] In his amended Rule 3.850 motion filed December 10, 2015, Petitioner raised
the following claims: (1) ineffective assistance of counsel (IAC) for failing to move to
suppress; (2) IAC for failing to petition for writ of prohibition; (3) trial court error in failing
to hold a Richardson hearing; (4) IAC for failing to object to jury instruction on elements
not charged; (5) IAC for failing to object to amendment of the Information after speedy
trial ran; (6) IAC for failing to object to jury instructions; (7) IAC for failing to object to
illegally obtained evidence; (8) IAC for failing to call and investigate alibi witnesses;
(9) IAC for failing to move for a non-adversary probable cause determination and an
adversary preliminary hearing; (10) IAC for failing to impeach witnesses; (11) IAC for
failing to object to hearsay testimony; (12) IAC for failing to object to prosecutor's
closing argument and move for rule of completeness; (13) IAC for failing to request alibi
jury instructions and failing to object to standard instruction when notice of alibi was
filed; (14) trial court error in failing to give requested alibi instruction; (15) IAC for failing

On August 31, 2016, the post-conviction court summarily denied the claims in the December 10, 2015, motion. Ex. V at 159-508. Petitioner appealed to the First District Court of Appeal without briefing[5] and the appellate court affirmed per curiam without written opinion on March 28, 2017. Ex. AA. The mandate issued on May 22, 2017. Ex. CC. While the post-conviction appeal was pending, Petitioner filed a motion to correct sentencing error on July 12, 2016, Ex. DD at 5, which was denied by the trial court on September 6, 2016. Ex. DD. Petitioner appealed without briefing and on March 8, 2017, the appellate court affirmed per curiam without opinion. Ex. FF. The mandate issued on May 4, 2017. Ex. II. Prunty v. State, 231 So. 3d 407 (Fla. 1st DCA 2017) (table).

On May 2, 2017, Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following grounds for relief:

---

to object to sufficient of evidence and make adequate motion for judgment of acquittal; (16) IAC for failing to file motion for new trial; (17) IAC for failing to object to venire on equal protection grounds; (18) IAC for waiving defendant's presence at depositions; (19) IAC for failing to preserve, acquire, or subpoena video to support alibi; (20) IAC for failing to move court to rule on pending motions before trial; and (21) cumulative error. Ex. V at 75-153.

    [5] *See* Florida Rule of Criminal Procedure 9.141(b)(2)(C) (providing that briefs are "not required" when a petitioner appeals from summary denial of a Rule 3.850 motion). When a brief is submitted, however, only those arguments that are fully presented will be preserved. Watson v. State, 975 So. 2d 572, 573 (Fla. 1st DCA 2008).

(1) trial counsel rendered ineffective assistance by (a) failing to file proper motion to suppress evidence, (b) failing to file proper motion for judgment of acquittal, (c) failing to file a motion for speedy trial, and (d) failing to file a motion for amendment of the Information after the speedy trial period expired.  ECF No. 1 at 5.

(2) the trial court violated Petitioner's 4th, 5th, 6th, and 14th Amendment rights by giving a jury instruction on elements not charged in the Information.  ECF No. 1 at 6.

(3) Petitioner's 4th, 5th, 6th, and 14th Amendment rights were violated when the State used hearsay and improper prosecutorial comments during trial and closing argument after a motion in limine had been filed prohibiting use of jail calls and third-party testimony.  ECF No. 1 at 8.

(4) the State court proceedings were tantamount to a "Rubber Stamp" lacking substantive and procedural due process; court agreed and grant[] issues raised; however, accord/afforded no relief, no evidentiary conclusive findings and no equal protection.  ECF No. 1 at 10.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

As amended by AEDPA, § 2254(d) stops short of imposing a
complete bar on federal-court relitigation of claims already
rejected in state proceedings. . . .  It preserves authority to
issue the writ in cases where there is no possibility fairminded

jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' "  Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

 "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim."  Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim."  Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995); <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).  The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Henry</u>, 513 U.S. at 365) (quoting <u>Picard</u>, 404 U.S. at 275 (citation omitted)).  "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  <u>O'Sullivan</u>, 526 U.S. at 845; *see also* <u>Picard</u>, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual

foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007)

(citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus,

procedurally defaulted, the Petitioner must show cause for the default and

prejudice resulting therefrom or a fundamental miscarriage of justice.

Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate

cause, Petitioner must show that an "external impediment, whether it be

governmental interference or the reasonable unavailability of the factual

basis for the claim, must have prevented petitioner from raising the claim."

Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477

U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497

(1991) (emphasizing that the external impediment must have prevented the

petitioner from raising the claim).  A federal court may grant a habeas

petition on a procedurally defaulted claim without a showing of cause or

prejudice if necessary to correct a fundamental miscarriage of justice.

Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to

satisfy the miscarriage of justice exception, the Petitioner must show that a

constitutional violation has occurred that "probably resulted in a conviction

of one who is actually innocent"—that it is more likely than not that no

reasonable juror would have convicted him—which is a stronger showing

than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S. 298, 327 (1995).  This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is "extremely rare."  Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181.  The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed

by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S.

422, 434 (1983).  "Determining the credibility of witnesses is the province

and function of the state courts, not a federal court engaging in habeas

review."  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir.

2011).  Credibility and demeanor of a witness are considered to be

questions of fact entitled to a presumption of correctness under the AEDPA

and the Petitioner has the burden to overcome the presumption by clear

and convincing evidence.  *Id.* at 845.

For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at

690).

Where the state court has already considered an ineffective-

assistance claim and determined that the claim was not meritorious

because, based on state law, counsel was not deficient or prejudice did not

result from counsel's alleged failures, federal habeas courts must accept

the state court's determination.  *See* Callahan v. Campbell*, 427 F.3d 897,

932 (11th Cir. 2005) ("It is a 'fundamental principle that state courts are the

final arbiters of state law, and federal habeas courts should not second-

guess them on such matters.' " (quotation and citation omitted)); *see also*

Panzavecchia v. Wainwright, 658 F.2d 337, 340 (5th Cir. Unit B Oct. 1981)

(stating that federal courts are compelled to defer to a state court's

interpretation of its own criminal laws, rules of evidence, and rules of

criminal procedure).

To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  466 U.S. at

694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. Strickland, 466 U.S. at 697.

## **Ground 1: Ineffective Assistance of Trial Counsel**

In this ground, Petitioner raises five sub-claims which appear to relate to his post-conviction claims 1, 2, 5, 9, and 15. The post-conviction court summarily denied all the claims and the state appellate court affirmed without discussion.

## A. Failure to move to suppress.

Petitioner contends that trial counsel rendered ineffective assistance for failing to move to suppress four scratch-off lottery tickets and currency taken from his pants pocket found in his residence. ECF No. 1-1 at 3. He alleges that the search was conducted without a warrant or valid consent. *Id.* The post-conviction court denied the claim, stating in pertinent part:

> During trial, Sergeant Mike Schentrup of the Gainesville Police Department testified that he obtained from Ms. Rowe [Petitioner's girlfriend] to search her home for evidence related to the home invasion robbery. *See* Trial Transcript at 145 (lines 5-7). As part of the search, Ms. Rowe gave Sgt. Schentrup the jeans that Defendant had been wearing the night before. In those jeans, Sgt. Schentrup found lottery tickets and currency which were connected to the home invasion robbery. *Id.* at 146 (lines 5-25). The search occurred a few hours after the home invasion robbery. *Id.* at 155 (lines 6-11).
>
> Ms. Rowe testified at trial that she consented to the search of her home; and, provided the pants that Defendant was wearing that night to law enforcement. *See* Trial Transcript at 206 (lines 24-25) - 209 (lines 1-22)), 211 (lines 18-25) – 215 (lines 1-22). The pants were searched by Sergeant Schentrup; and, the contents of the pants were seized by him as a result of the search.
>
> . . . .
>
> Here, Ms. Rowe had actual authority to consent to the search of her apartment; however, she did not have the authority, either actual or implied, to consent to the search of Defendant's pants. She merely handed them to Sgt. Schentrup after he requested that she retrieve them. At the time of the search of the pants, Defendant was not under arrest and not in the apartment. Thus, the search of Defendant's pants, which was done prior to his arrest, was neither consensual nor based on a warrant.

Despite this fact, the two victims in this case personally knew Defendant; and, immediately identified him to law enforcement as one of the persons who had committed the home invasions robbery of their home. *See* Trial Transcript (lines 14-25) – 115 (lines 1-15). Thus, other evidence of Defendant's guilt existed beyond the currency and lottery tickets found in his pocket. For this reason, even if counsel did err by failing to move to suppress the currency and lottery tickets, Defendant fails to show that this purported error affected the outcome of his trial. Accordingly, the claim raised is without merit.

Ex. V at 163-65.

Petitioner has not demonstrated a reasonable probability that, but for counsel's error in failing to move to suppress, the outcome of the trial would have been different—a reasonable probability being one sufficient to undermine confidence in the outcome. *See* Strickland, 466 U.S. at 694. Even if the lottery tickets and currency had been suppressed, the testimony of the victims implicated Petitioner in the home invasion robbery and was sufficient for the jury to find Petitioner guilty as charged.

The home invasion robbery with which Petitioner was charged alleged that he unlawfully entered the dwelling and took property from victims Melvin Anderson and Shelia Lorraine Dean. Ex. A at 8. Dean testified she had known Petitioner since he was a child and that he had been in the home earlier in the day. She identified Petitioner as one of the two assailants. Ex. B at 87-93. Anderson also testified that Petitioner had

been in the home earlier that day and was wearing the same clothes he

wore that day.  He testified he could identify Petitioner by his voice and

walk even though Petitioner's face was partially covered.  Ex. B at 30-37,

49.

Petitioner did not meet the prejudice prong of <u>Strickland</u> and, for that

reason, he has not shown that the adjudication of the state court resulted in

a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the

United States, or was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding.  28 U.S.C.

§ 2254(d).  This sub-claim should be denied.

## B. Failure to make proper motion for judgment of acquittal.

Petitioner's next sub-claim contends that trial counsel rendered

ineffective assistance by failing to make an adequate motion for judgment

of acquittal based on insufficiency of the evidence.  ECF No. 1 at 5; ECF

No. 1-1 at 49.  Petitioner contends that "substantial facts support an

argument that he may have prevailed with a more skillfully presented

motion for judgment of acquittal considering the weak evidence at trial."  He

further contends that counsel's "boilerplate" motion failed to preserve the issue of sufficiency of evidence for appeal.  *Id.* at 127.

Petitioner raised this claim in his motion for post-conviction relief, Ex. V at 125, and the state court denied relief.  However, the post-conviction court treated the claim as one directly challenging the sufficiency of the evidence—which should have been raised on direct appeal—rather than a claim of ineffective assistance of counsel, which is properly raised in a Rule 3.850 motion.  See Ex. V at 174.  Even so, the claim fails to demonstrate that, but for the alleged error of counsel in making a boilerplate motion for judgment of acquittal, the result of the trial would have been different.

To present a facially sufficient post-conviction claim that counsel was ineffective in failing to raise and preserve a sufficiency of the evidence claim in a motion for judgment of acquittal, "a movant should state sufficient facts to show that '[he] may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial.' "  Neal v. State, 854 So. 2d 666, 670 (Fla. 2d DCA 2003) (quoting Boykin v. State, 725 So. 2d 1203, 1203 (Fla. 2d DCA 1999)).  "Where there is no showing that a motion for judgment of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim for ineffectiveness of counsel."  Neal, 854 So. 2d at 670.

Petitioner fails to state facts that show a more skillful motion would have had a likelihood of success. He alleges that the victims' descriptions of the masked men were "vague and full of uncertainties." Ex. V at 125. He also focuses on the fact that the police found lottery tickets in his pants pocket and reported the tickets to the victims who "thought" the tickets could have been in a bag taken in the robbery. *Id.* at 125-26. These facts, even if argued to the trial court, do not demonstrate a reasonable probability of success of a judgment of acquittal in light of the evidence presented at trial.

In the police report supporting Petitioner's arrest the victims reported that the defendant and another man pushed their way into the home, ripped gold chains off the neck of one victim, took currency, took a bag containing rare coins and cash, and left. The report identified defendant as one of the men and said he had come to the residence earlier that day wearing the same jeans he had on during the robbery, and that he was a long-time acquaintance of the victims. Ex. A at 1-3. This early report of the offense was not "vague and full of uncertainties," as contended by Petitioner. The victims testified at trial essentially in accord with the earlier reports of the robbery, and said that the man with Petitioner brandished a handgun during the incident. *See* Ex. B at 28-45 (Anderson); Ex. B at 85-96 (Dean).

The state presented sufficient evidence to support the charges and conviction of Petitioner.  Trial counsel is not deficient for failing to make a meritless claim.  Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015).  "The second and more fundamental flaw in this argument is that it focuses on the outcome of the appeal, not of the trial.  The Supreme Court in Strickland told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal."  Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694-95).

This sub-claim lacks merit and provides no basis for § 2254 relief. Sub-claim B should be denied.

## C. Failure to file a petition for a writ of prohibition—speedy trial.

In this sub-claim, Petitioner contends that trial counsel rendered ineffective assistance for not petitioning to stop the trial based on speedy trial violations.  ECF No. 1-1 at 8.  Petitioner was arrested on October 26, 2011, and trial was not held until June 18, 2012, more than 175 days.  On April 30, 2012, defense counsel Goldman filed a notice of expiration of speedy trial time under Florida Rule of Criminal Procedure 3.191, and motion for discharge.  Ex. A at 47-48.  The motion alleged that two

continuances had been requested by the defense, but that they were due to discovery violations by the State. *Id.* at 47. A hearing was held May 7, 2012, at which the speedy trial issue was discussed and the trial court attributed one continuance to the State due to the State's inability to produce a videotape from Walmart on the night of the offense. Ex. A at 127.

Another hearing was held May 11, 2012, at which the court also took up the issue of assistant public defender Goldman's conflict of interest based on his office's representation of the recently identified alleged co-defendant. Ex. A at 151. Counsel argued that the conflict was not discovered earlier due to the State's late disclosure of the co-defendant, so the delay due to having to assign new counsel should be attributed to the State. Ex. A at 153-59. On May 14, 2012, the date set for trial, the trial court allowed Goldman to withdraw and appointed new counsel. Ex. A at 164. New defense counsel asked for a continuance to prepare for trial and argued that the delay should be charged to the State, but the court denied the request and ruled that a continuance would be granted on waiver of

speedy trial by the defense.[6]  Ex. A at 169-72.  Defense did request and

was granted a continuance over objection.

The postconviction court denied this sub-claim, which Petitioner

raised in his post-conviction motion in the state court, concluding that a

petition for writ of prohibition would not have been granted because the

defense requested a continuance based on lack of readiness to proceed to

trial.  The court correctly found that it is inappropriate for the appellate court

to make initial findings on which party should be charged with the

continuance; and "[w]hether the record contains sufficient evidence to

support findings of fact that the state is responsible for the continuances . .

. sought is not reviewable by writ of prohibition but must be reviewed on

plenary appeal in the pending criminal case."  Ex. V at 165-66 (quoting

McKinney v. Yawn, 625 So. 2d 885, 889-90 (Fla. 1st DCA 1993)).  The

state First District Court of Appeal affirmed denial of this sub-claim.  Ex. X.

Petitioner has not demonstrated that but for counsel's failure to seek

a writ of prohibition based on the speedy trial rule, the outcome of the trial

would have been different.  Because he cannot demonstrate deficiency of

---

[6] The trial court refused to charge the continuance required by new counsel to the State based on the court's finding that the State did not disclose the name of the co-defendant earlier because "the second suspect wasn't identified" until April of 2012 and law enforcement had "continued to work on the case" until that time.  Ex. A at 171-72.

counsel and prejudice flowing therefrom, he is not entitled to § 2254

habeas relief.  This sub-claim should be denied.

## D.  Amendment of the information after expiration of speedy trial.

Petitioner raised this sub-claim in his Rule 3.850 motion, Ex. V at 18,

where he contended that trial counsel rendered ineffective assistance by

failing to object or petition for a writ of prohibition when the State filed a

second amended information on June 13, 2012, a date falling after the

expiration of the 175-day speedy trial period.  *See* Ex. A at 61.  The first

Amended Information, filed on May 30, 2012, alleged in pertinent part that

Petitioner "displayed a firearm and concealed part of his face and/or his

identity with clothing," Ex. A at 59.  The Second Amended Information, filed

on June 13, 2012, alleged that he "did carry a deadly weapon, to wit a

firearm and during the commission of the offense concealed his face or

parts thereof with a mask or clothing."  Ex. A at 61.  The first Information in

the case, filed on December 1, 2011, did not allege a firearm or a mask or

face covering.  Ex. A at 8.

The post-conviction court denied the claim of ineffective assistance,

stating in part:

> However, "if an amended information is filed after the speedy
> trial time has expired and the defendant has not previously
> waived his or her right to speedy trial, then upon proper motion
> by the defendant, the new charges contained in the amended

information must be dismissed if they arose from the same
criminal episode as the charged contained in the original
information."  [State v. Clifton, 905 So. 2d 172, 178 (Fla. 5th
DCA 2005)].

Here, the Defendant waived his right to speedy trial
requesting a continuance from the original scheduled Trial.
See Jury Selection (May 14, 2012) Transcript at 2-12.
Furthermore, Defendant was not prejudiced by the amendment
because he was on notice that the charged offense involved the
use of a firearm and the masking of the face by the
perpetrators.  See Arrest Mittimus.  "Where the defendant is
afforded an adequate opportunity to investigate the evidence
and prepare a defense, an amendment to the information is not
improper even where the amendment adds a new charge with
different elements of proof."  [State v. Burgess, 153 So. 3d 286,
289 (Fla. 2d DCA 2014)].  For these reasons, Defendant fails to
show either error by counsel or prejudice.  Accordingly, the
claim raised is without merit.

Ex. V at 168.  The state appellate court affirmed denial of post-conviction

relief on this sub-claim.

On May 14, 2012, a date on which trial had been set, Petitioner's new

counsel sought a continuance because he needed time to prepare for trial.

He objected to the court finding the motion was a waiver of speedy trial

because he believed the delay was the fault of the State for not identifying

the co-defendant earlier, which identification precipitated the change of

counsel.  The trial court disagreed that the State wrongfully failed to identify

the co-defendant earlier and granted the continuance with a finding of

waiver of speedy trial.  The propriety of this ruling was not challenged on direct appeal.  See Ex. D.

Under governing law, trial counsel would have had no grounds to object to the amendment or seek a writ of prohibition because the amendment was filed after speedy trial was waived.  As noted earlier, it is not the province of the appellate court on a petition for writ of prohibition to make findings of fact concerning whether the State is responsible for the continuances that gave rise to the waiver.  *See* McKinney, 625 So. 2d at 889-90.  Moreover, in Florida, the State may amend its information at any time prior to trial or even during trial unless the defendant is prejudiced. "Where the defendant is afforded an adequate opportunity to investigate the evidence and prepare a defense, an amendment to the information is not improper even where the amendment adds a new charge with different elements of proof."  Burgess, 153 So. 3d at 289.  Petitioner provided nothing to the post-conviction court or to this Court to show that the amendment of the information prejudiced him in his preparation for trial.

Petitioner has failed to demonstrate that the state court's adjudication of this sub-claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that it was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This sub-claim should be denied.

## E.  Due Process and IAC—non-adversary probable cause determination.

In this sub-claim, Petitioner contends that trial counsel rendered

ineffective assistance by failing to move the court for a non-adversary

probable cause determination and failing to file a motion for discharge

when no hearing was held before a judge within 48 hours of his arrest

pursuant to Florida Rule of Criminal Procedure 3.133.  ECF No. 1 at 5.  He

contends that after his arrest on October 26, 2011, he was not given a non-

adversary probable cause determination while he was detained.  ECF No.

1-1 at 33-35.

This claim was raised in his Rule 3.850 motion and summarily

denied.  The denial was affirmed on appeal.  In denying this claim, the state

post-conviction court stated in pertinent part:

> First, a non-adversarial probable cause determination was
> made at Defendant's first appearance.  *See* First Appearance
> Order at 1; *see also* Fla. R. Crim. P. 3.133(a)(1)
> ("Nonadversary Probable Cause Determination . . . .  This
> determination shall be made if the necessary proof is available
> at the time of the first appearance as required under rule 3.130,
> but the holding of this determination at that time shall not affect
> the fact that it is a nonadversary proceeding."); Fla. R. Crim. P.
> 3.133(a)(3) . . . .  Second, even if counsel had requested an
> adversary preliminary hearing, and one had been held, and a
> finding of no probable cause made, Defendant "would not have

> been entitled to a dismissal of the charges, but simply a release
> on his own recognizance." White v. State, 62 So. 3d 1156,
> 1157 (Fla. 3d DCA 2011) [citations omitted].  For this reason,
> even if counsel did err by failing to move for an adversary
> preliminary hearing, Defendant fails to show any prejudice.
> Accordingly, the claim raised is without merit.

Ex. V at 170-71.  The First Appearance Order, entered on October 26,

2011, the day that Petitioner was arrested, states a "finding of probable

cause" was made.  Ex. V at 183.  Moreover, the sworn arrest report sets

forth the facts alleged by the victims and provides a basis for the probable

cause finding.  *See* Ex. A at 1-3.

Thus, counsel was not deficient for failing to seek a non-adversary

probable cause determination because a probable cause determination

was made at first appearance.  Further, Petitioner has failed to

demonstrate a reasonable probability that, but for counsel's alleged error in

not requesting an adversary preliminary hearing when no information was

filed within 21 days of his arrest as required by the rule, the outcome of the

trial would have been different.  He cannot demonstrate that under Florida

law, he would have been discharged or the case would have been

dismissed.  Nor has he alleged any facts to show that the failure of counsel

to seek an adversary probable cause hearing deprived him of due process

and was prejudicial.  Federal habeas relief on this sub-claim should be

denied.

## **Ground 2: Principals Jury instruction**

Petitioner contends that trial counsel rendered ineffective assistance in failing to object to jury instructions on the law of principals when he was not charged in the Information as a principal or, he contends, proven at trial to be a principal.[7]  ECF No. 1 at 6; ECF No. 1-1 at 17, 6.  He raised this issue in the post-conviction court, Ex. V at 93, 100, and the claim was denied.  Ex. V at 166, 168.  The First District Court of Appeal affirmed.

Petitioner argues that the Second Amended Information did not allege he was a principal to the crime and, further, that the verdict form, which provided options for the jury to find that "during the commission of the home invasion robbery Defendant as principal or codefendant was armed with a deadly weapon," could have confused the jury.  ECF No. 1-1 at 17.

The post-conviction court explained in its order denying relief that under Florida law it is appropriate to give the principals instruction if the evidence adduced at trial supports it.  Ex. V at 166-67.  The court stated that in order for the principals theory to apply (1) the defendant must have

---

[7] On direct appeal from his conviction and sentence, Petitioner alleged that the trial court committed fundamental error in giving the principals instruction because it was not alleged in the Information that Petitioner was a principal.  Ex. D.  The appellate court affirmed without discussion.  Ex. F.

intended for the offense to be committed; and (2) the defendant must have assisted in the commission of the offense. *Id.* at 167 (citing Acord v. State, 841 So. 2d 587, 589 (Fla. 2d DCA 2003); Watkins v. State, 826 So. 2d 471, 474 (Fla. 1st DCA 2002)). The state court concluded that the evidence supported the principals instruction in that it showed he committed the offense with another person. *Id.* The court found that, for these reasons, trial counsel was not deficient in failing to object. Ex. V at 167.

The post-conviction court also denied relief on Petitioner's allegation that trial counsel was ineffective for failing to object to the principals instruction as it applied to whether he was armed with a deadly weapon or firearm because the evidence did not support the instruction. Ex. V at 168-69. The state court found this claim to be a challenge to the sufficiency of the evidence, which should have been raised on direct appeal. *See* Ex. V at 167. However, Petitioner's claim was actually one of ineffective assistance of counsel for failing to object to the instruction for lack of evidentiary support, which is properly raised in a Rule 3.850 motion.

Regardless, the post-conviction court's denials of relief are not contrary to or an unreasonable determination of any federal law, nor are they an unreasonable determination of the facts in light of the evidence. Florida law allows the principals instruction to be given, even if not

specifically charged, if the evidence at trial supports it. "Under Florida law,

a person who is charged in an indictment or information with commission of

a crime may be convicted on proof that []he aided or abetted in the

commission of such crime." State v. Larzelere, 979 So. 2d 195, 215 (Fla.

2008). "[I]t is now well established in Florida that a person who is charged

in an indictment or information with commission of a crime may be

convicted upon proof that he aided or abetted in the commission of such

crime, under Section 776.011, Florida Statutes, F.S.A., which enacted the

recognized precept into statutory law."[8] State v. Roby, 246 So. 2d 566, 570

(Fla. 1971). "[A] person is a principal in the first degree whether []he

actually commits the crime or merely aids, abets or procures its

commission, and it is immaterial whether the indictment or information

alleges that the defendant committed the crime or was merely aiding or

abetting in its commission, so long as the proof establishes that []he was

guilty of one of the acts denounced by the statute." Id. at 571. Accordingly,

"if an information charges a defendant with a substantive crime . . . and the

proof establishes only that he was feloniously present, aiding, and abetting

---

[8] The Eleventh Circuit has also held that aiding and abetting need not be
specifically alleged in the indictment and, assuming the evidence supports it, the
accused can be convicted of aiding and abetting so long as the jury is instructed on it.
United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984).

in the commission of the crime, a verdict of guilt as charged should be sustained." Watkins v. State, 826 So. 2d 471, 474 (Fla. 1st DCA 2002) (citing Roby, 246 So. 2d at 571); *see also* Roberts v. State, 813 So. 2d 1016, 1017 (Fla. 1st DCA 2002).

The testimony of both victims established that Petitioner was one of two persons who pushed their way into the home and stole items from the victims. Both persons pulled gold chains from victim Andersons' neck. Petitioner took the bag containing coins and cash. The co-defendant demanded to know where the money was. The co-defendant brandished a pistol. Petitioner failed to show that trial counsel was deficient in failing to object to the principals instruction on the grounds that it was not alleged in the Information or that the evidence did not support the instruction.

The post-conviction court did not expressly address Petitioner's additional claim that trial counsel should have objected to the verdict form, which allowed the jury to find that "as principal or codefendant," Petitioner was armed with a deadly weapon, and "as principal or codefendant," Petitioner was armed with a firearm. Ex. A at 67. As discussed above, the principals instruction was proper; thus, counsel had no basis on which to object to the use of the phrase "as principal or codefendant" on the verdict form. Moreover, to the extent that Petitioner contends that trial counsel

should have objected to a verdict that allowed him to be convicted of home

invasion robbery that was committed by persons carrying a firearm or

deadly weapon when the evidence showed his accomplice carried the

firearm, that issue was raised in Petitioner's motion to correct sentencing

error in state court. Ex. DD at 1-9.  The state court denied the motion by

order entered September 6, 2016, in which the court noted that Florida law

prohibiting a sentence enhancement under section 775.087(1), Florida

Statutes, based on possession or use of a firearm by a co-defendant was

not dispositive because Petitioner's sentence was not "enhanced" or

"reclassified" under that provision.  Ex. DD at 21-22.  The order notes that

Petitioner was sentenced under section 812.135(2)(a), Florida Statues,

which provides that if in the course of committing the home invasion

robbery, the person carries a firearm or other deadly weapon, the offense is

a felony of the first-degree punishable by a term of years not exceeding life

in prison.  The state First District Court of Appeal affirmed without

discussion on March 8, 2016.  Ex. FF.  Thus, the State court determined

that sentencing Petitioner to life for armed home invasion robbery when it

was the co-defendant who carried the firearm was not error.

The law in Florida provides that a sentence cannot be <u>enhanced</u>

under section 775.087(1) based on a co-defendant's possession or use of

a weapon or firearm.  Connolly v. State, 172 So. 3d 893 (Fla. 3d DCA

2015).  As the State court found, Petitioner's sentence was not enhanced

under section 775.087(1) for possession or use of a firearm.  Petitioner was

convicted and sentenced under section 812.135(2), Florida Statutes.

For example, Florida law provides that a defendant may be convicted

of armed robbery even if the firearm was actually possessed by a co-

defendant during the crime.  Staten v. State, 203 So. 3d 169 n.2 (Fla. 3d

DCA 2016) (Emas, J., concurring) (citing Stripling v. State, 645 So. 2d 589,

590 (Fla. 3d DCA 1994)).  *See also* Freeny v. State, 621 So. 2d 505, 506

(Fla. 5th DCA 1993).  The armed robbery statute, section 812.13(2)(a),

Florida Statutes, is similarly worded to section 812.135(2), the statute

under which Petitioner was convicted and sentenced.  That statute makes

home invasion robbery punishable by life in prison if it is accomplished with

a firearm or deadly weapon.  Neither statute is an "enhancement" or

"reclassification" statute.

Because there was no sentencing error, and because the evidence

supported the jury's finding that during the commission of the home

invasion robbery Petitioner was armed with a deadly weapon and a firearm

"as principal or codefendant," trial counsel was not deficient for failing to

object.  Moreover, because Petitioner's sentence was properly imposed

under section 812.135(2)(a), he cannot demonstrate prejudice in trial counsel's failure to object to the verdict form.

Lastly in this ground, to the extent Petitioner is contending that trial counsel should have objected to the verdict form allowing the jury to find that he concealed his face with mask, the claim is without merit and should be denied.  ECF No. 1-1 at 24.  Petitioner argues that the jury heard no evidence that he wore a "mask" and that his sentence was enhanced based on jury's finding of a mask under section 775.0845, Florida Statutes (2011).  The victims testified that during the incident Petitioner's face was partially covered up to his nose with his shirt. Ex. B at 37, 93.

Section 775.0845 provides that if the defendant commits a felony degree of any criminal offense, the offense shall be reclassified to a felony of the next higher degree if the person concealed his identity with a "hood, mask, or other device."  The jury was instructed, as the statute states, to determine if Petitioner concealed his face with a hood, mask or other device, and if they so find, the jury was instructed to mark the verdict form section indicating that during the commission of the offense, Petitioner concealed his face with a mask.[9]  Ex. B at 364.  Thus, by the jury finding

---

[9] The verdict form was not artfully drafted, mentioning only "mask," but the jury was fully instructed not to make that finding unless the jury found Petitioner concealed his identity with a "hood, mask, or other device,"

Petitioner wore a mask, they necessarily found—based on the correct jury instruction—that he concealed his face with "a hood, mask, or other device" as required by the statute.

Moreover, Petitioner was sentenced as a Prison Releasee Reoffender pursuant to section 775.082(9)(a), Florida Statutes (2012), which provides that if the defendant commits a specified offense, including home invasion robbery, within three years of release from prison following incarceration for a felony offense, the defendant must be sentenced to the maximum sentence for the offense of which he is convicted—in this case a sentence of life in prison.  Thus, Petitioner cannot demonstrate that the finding he wore a mask increased his sentence above that which he would have otherwise received.  For this reason, no prejudice can be shown in his counsel's failure to object to the form of the verdict allowing the jury to find, under proper instruction, that Petitioner wore a mask.

Petitioner has not demonstrated entitlement to federal habeas relief under 28 U.S.C. § 2254.  Accordingly, this ground should be denied.

## Ground 3: Hearsay and Prosecutorial Comment

Petitioner contends in this ground that trial counsel rendered ineffective assistance by failure to object to hearsay testimony and failure to object to improper prosecutorial comments.  ECF No. 1 at 8; ECF No. 1-

1 at 39 and 41.  These claims were raised in state court, Ex. V at 115-18, and were denied.  Ex. V at 172-73.  The state appellate court affirmed without written opinion.

## A. Failure to object to hearsay testimony.

In this sub-claim, Petitioner contends that trial counsel was deficient in failing to object to hearsay testimony by Detective Blair Ettinger that, as part of his investigation, he contacted the Florida Department of Lottery to determine the age of lottery tickets found in Defendant's pants.  ECF No. 1-1 at 115.  Detective Ettinger testified that he contacted the Lottery Investigations agent and gave the lottery ticket numbers.  Ex. B at 175.  He was told three were issued in May 2009 and one was issued in October 2008.  *Id.*  On cross-examination, Ettinger testified that he called victim Anderson and asked him whether there were lottery tickets in the stolen items.  *Id.* at 176.  He was told there were tickets taken.  *Id.*  Prior to Ettinger's testimony, victim Anderson testified that the lottery tickets were expired but had sentimental value to him.  *Id.* at 49, 65.  Anderson testified on cross-examination that Ettinger had called and asked him if he had any lottery tickets in the bag that was stolen and Anderson told him he did.  *Id.* at 68.  Anderson testified that the tickets were ones he had been keeping in his black bag.  *Id.* at 47-48.  Anderson explained that he recognized them

because he was the one who found them in his fiancé's Bible and could differentiate them from other scratch-off tickets because of their graphics and logos, the different games, and different artwork. *Id.* at 65-66.

The post-conviction court found that Ettinger's testimony was "classic hearsay" concerning the dates of issuance of the lottery tickets and that counsel should have objected. Ex. V at 172. However, the court concluded that Petitioner failed to show prejudice because Anderson identified the tickets as the ones stolen from him. *Id.* at 173. It was for the jury to make the necessary credibility determinations on that testimony. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011). The hearsay testimony of the dates of the tickets was not crucial to the credibility of Anderson's testimony concerning what was stolen from him and who was responsible. The two victims identified Petitioner, a man who was known to both, as one of the men who committed the home invasion robbery. Petitioner has not demonstrated that but for counsel's error in failing to object to the hearsay testimony of Detective Ettinger, there is a reasonable probability—sufficient to undermine confidence—that the outcome of the

trial would have been different.  *See* Strickland, 466 U.S. at 994.  Thus, habeas relief on this sub-claim should be denied.

## B. Failure to object to improper prosecutorial comments.

In this sub-claim, Petitioner contends that counsel rendered ineffective assistance by his failure to object to improper prosecutorial comments during closing argument and failure to "move for a rule of completeness."  ECF No. 1 at 8; ECF No. 1-1 at 41.  Petitioner contends that a motion in limine was filed several months before trial concerning a jail telephone call between Petitioner and his girlfriend Tasha Rowe, who had allowed law enforcement to search their residence and who had produced Petitioner's pants when requested by them.[10]  A trial court ruling on the motion in limine does not appear in the record.  One jail telephone call was played for the jury by stipulation, although the jury was not told it was a jail call.  Ex. B at 188.  During closing argument, the prosecutor played a portion of the call, noting that in it Petitioner asked Rowe, "Why did you give them those pants?"  *Id.* at 344.  The prosecutor argued that the call showed Petitioner's recognition that the pants linked him to the crime.  *Id.*

---

[10] The motion in limine sought to exclude the jail call because it might reveal Petitioner was in jail and because it would reveal Petitioner had been unfaithful to his girlfriend.  Ex. A at 45.

Petitioner raised this issue in the post-conviction court, Ex. V at 117, and was denied.  Ex. V at 173.  He argued that counsel should have objected to the argument and moved to play the whole telephone call for completeness.  *Id.* at 117.  He argued that the entire call would have shown that nowhere in the call did he mention lottery tickets and that the main subject of the call was about infidelity.  *Id.* at 117-18.  In denying the claim, the post-conviction court noted that during closing, defense counsel argued that Petitioner was mainly concerned with loss of money that was in the pants that Petitioner had counted on to pay his bondsman relating to a drug sale he had been arrested for earlier, not that the pants indicated his guilt. *See* Ex. B at 356.  During trial, Detective Schentrup testified that when he examined the jeans produced by Rowe, in addition to lottery tickets, he found currency, the denominations of which, including two-dollar bills, closely matched the money victim Anderson testified was taken in the robbery.  Ex. B at 145.  Petitioner had testified at trial that he got two-dollar bills, the other cash, and the lottery tickets from a drug transaction.  Ex. B at 285.

In denying this claim of ineffective assistance of counsel, the postconviction court also noted that Petitioner did not make any explicitly inculpatory or exculpatory statements in the telephone call, and that the

majority of the call was not relevant to any issue of Petitioner's guilt.  Ex. V

at 173.  The court concluded that no deficiency of defense counsel was

shown by his failure to object to the closing argument or failure to ask that

the whole call be played.  *Id.*  The court also concluded Petitioner had

failed to show prejudice.  *Id.*

This finding has not been shown to be an unreasonable

determination of the evidence.  In Florida, attorneys are generally afforded

wide latitude in presenting closing arguments.  "[T]he proper exercise of

closing argument is to review the evidence and to explicate those

inferences which may reasonably be drawn from the evidence."  King v.

State, 130 So. 3d 676, 687 (Fla. 2013) (quoting Gonzalez v. State, 990

So.2d 1017, 1028-29 (Fla. 2008) (quoting Bertolotti v. State, 476 So. 2d

130, 134 (Fla. 1985)).  *See also* Fletcher v. State, 168 So. 3d 186, 213

(Fla. 2015).  The Florida Supreme Court has explained:

> The law is well-settled that "[w]ide latitude is permitted in
> arguing to a jury."  Breedlove v. State, 413 So. 2d 1, 8
> (Fla.1982).  Logical inferences may be drawn, and counsel is
> allowed to advance all legitimate arguments.  Thomas v. State,
> 748 So. 2d 970, 984 (Fla. 1999).  "It is within the judge's
> discretion to control the comments made to a jury, and [this
> Court] will not interfere unless an abuse of discretion is shown."
> Moore v. State, 701 So. 2d 545, 551 (Fla. 1997).

Tai A. Pham v. State, 70 So. 3d 485, 492 (Fla. 2011).

The comments of the prosecutor in this case met this standard. Thus, any objection by counsel would not likely have been sustained. Further, defense counsel argued an alternative view of the evidence presented during the trial when the jury heard the telephone call—that Petitioner was upset about the pants being given to law enforcement because his money for bail had been lost.

Petitioner has not demonstrated that the adjudication of the State court, which is entitled to AEDPA deference, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, federal habeas relief of this sub-claim should be denied. *See* 28 U.S.C. § 2254(d).

## Ground 4: Substantive and Procedural Due Process

Petitioner appears to argue in this last claim that, based on the rulings made in all his grounds, he was denied substantive and procedural due process and equal protection. ECF No. 1 at 10. He does not explain this claim in his petition, although he appears to make a cumulative error claim by referring to all the grounds he raised in the trial court and the post-

conviction court.[11]  ECF No. 1-1 at 63; ECF No. 28 at 26-28.  Assuming

that the claim he attempts to raise in Ground 4 is a cumulative error claim,

the Respondent is incorrect that Petitioner failed to raise this claim in the

state court.  Petitioner raised a cumulative error claim in his motion for

post-conviction relief, Ex. V at 139, which was denied by the state court.

Ex. v at 178-79.

The Eleventh Circuit has rejected similar "cumulative error" claims

asserted in federal habeas actions.  *See, e.g.,* Insignares v. Sec'y, Fla.

Dep't of Corr._, 755 F.3d 1273 (11th Cir. 2014).  The Court in Insignares

explained:

> Insignares claims cumulative error deprived him of a fair trial.
> Under the cumulative-error doctrine, a sufficient agglomeration
> of otherwise harmless or nonreversible errors can warrant
> reversal if their aggregate effect is to deprive the defendant of a
> fair trial.  Morris v. Sec'y, Dep't of Corr._, 677 F.3d 1117, 1132
> (11th Cir. 2012).  "This court has made clear that where '[t]here
> [is] no error in any of the [trial] court's rulings, the argument that
> cumulative trial error requires that this Court reverse [the
> defendant's] convictions is without merit.' "  *Id.* (*quoting* United
> States v. Taylor_, 417 F.3d 1176, 1182 (11th Cir. 2005) (per
> curiam)) (alterations in original).  Because we have found no
> error in the issues on appeal, Insignares has failed to show that

---

[11] To the extent Petitioner is seeking federal habeas relief because he was not granted an evidentiary hearing on his Rule 3.850 motion, that claim is not cognizable in this proceeding.  Carroll v. Sec'y, Dep't of Corr._, 574 F.3d 1354, 1365-66 (11th Cir. 2009).  Due process violations during state collateral proceedings are issues unrelated to the conviction and sentence.  *Id.* at 1365.  *See also* Alston v. Dep't of Corr._, Fla., 610 F.3d 1318, 1325-26 (11th Cir. 2010); Anderson v. Sec'y for Dep't of Corr._, 462 F.3d 1319, 1330 (11th Cir. 2006) (per curiam); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam).

> the state judge lacked a reasonable basis to deny his
> cumulative-error claim.

*Id.* at 1284.  Even if petitioner's "cumulative error" claim was cognizable on

federal habeas review, the claim provides no basis for federal habeas relief

in this case.  The state postconviction court found no basis for post-

conviction relief and the State appellate court affirmed.

Because each of the habeas claims fail, the cumulative error claim

must fail.  Morris, 677 F.3d at 1132 (assuming without deciding that a

cumulative error claim is cognizable, cumulative error claim must fail as

none of Morris's individual claims of error or prejudice has any merit, and

therefore the Court has nothing to accumulate).  *See also* Maynard v.

Sec'y, Dep't of Corr., No. 16-16040-C, 2017 WL 4457447, at *3 (11th Cir.

May 30, 2017) (not reported; Finch v. Sec'y, Dep't of Corr., 643 F. App'x

848, 853 (11th Cir.) (unpublished), *cert. denied*, Finch v. Jones, 137 S. Ct.

519 (2016); United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011);

Forrest, 342 F. App'x at 565 (unpublished).  Because neither the State

courts nor this Court has found any error in the issues raised by Petitioner,

he has not shown that the State courts lacked a reasonable basis to deny

his cumulative error claim.  For the foregoing reasons, this cumulative error

claim should be denied.

## Conclusion

Based on the foregoing, Petitioner Larry Rashone Prunty is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to

whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 2, 2018.


**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not**

**<u>control</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**